DONALDSON, Judge.
This case arises from a dispute over the ownership of three parcels of real estate on which a church building and a cemetery are located. One party moved for summary judgment. The other party did not. A summary judgment was entered in favor of the nonmovant, and the movant appealed. Because the movant was not fully heard on all issues, we must reverse the judgment.
Oak Grove Methodist Church (hereinafter referred to as “the local church”) is a place of worship in Blount County. For many years, the local church was associated with the United Methodist Church denomination. In April 2009, suit was filed in the name of “Oak Grove Methodist Church, by and through John ‘Bobby’ Green, its representative” (hereinafter referred to as “Mr. Green”) against Mountain Lakes District, North Alabama Annual Conference, United Methodist Church, Inc. (hereinafter referred to as “Mountain Lakes”). The complaint alleged that the local church had been in existence since at least 1873 and that it had been affiliated with the United Methodist Church since *174 the 1960’s. The complaint described the plaintiff as follows:
“The Plaintiff (‘the local church’) is a church of Christians who meet at the site where the church building now stands.... The believers have met and owned the land there since at least the year 1873.”
Mr. Green alleged that the local church had approximately 15 members and that “by a vote of 8-2 of the congregation,” taken in November 2008, it was no longer affiliated with the United Methodist Church. Mr. Green further alleged that several members of the local church had met with United Methodist Church officials before the vote conducted in November 2008, and that the decision to disaffiliate from the United Methodist Church had been confirmed in February 2009 “[b]y a vote of 18-5.”[1] The complaint described conflicts that had developed between members of the local church who supported the decision to sever ties with the United Methodist Church and those who opposed the decision. The complaint alleged that a dispute had arisen over the ownership of money and certain real property. Mr. Green alleged that, under Alabama trust laws, the land -in dispute was not held in trust for the benefit of the United Methodist Church. Although the local church was described as a “not-for-profit corporation,” the complaint did not identify any trustees of the local church or describe an organized structure of the local church. The complaint did not explain Mr. Green’s status in relation to the local church or identify on what basis Mr. Green had standing to bring the suit as a representative of the local church. The complaint contained a jury demand and sought the following declaratory relief:
“Specifically, the ‘local church’ seeks a judicial determination of its rights and duties, and a declaration: (a) that all property held by or for ‘the local church,’ and any improvements thereon, whether real or personal, including, without limitation, the Land and Money,[2] corporeal or incorporeal, movable or immovable, is held without any trust in favor of the national denomination or nay [sic] of its regional administrative units; (b) that all property held by or titled in the name of the local church is held by it in full and exclusive ownership; and (c) that neither the United Methodist Church nor the Defendant subsidiary has any right, title or interest in the said property, nor right to determine or interfere with the ownership thereof or the exercise of rights therein.”
The complaint also sought to enjoin the United Methodist Church or any of its agents from taking any action regarding the local church or any assets of the local church. Mr. Green also filed an ex parte application for injunctive relief with the complaint, but the trial court did not grant ex parte relief. A hearing on his request for temporary or preliminary injunctive relief was held 6 days after the complaint was filed. That request was also denied.
Mountain Lakes, the named defendant, is a not-for-profit corporation incorporated in Etowah County. The parties agree that, pursuant to the rules and policies of the United Methodist Church, Mountain Lakes is the proper entity to defend the lawsuit and to assert a claim on behalf of *175 the United Methodist Church to the funds and property. Mountain Lakes filed an answer to the complaint, admitting that a dispute had arisen regarding the ownership of funds and real property used by the local church but denying that Mr. Green was entitled to the real property or the funds. Mountain Lakes also asserted other defenses it described as “affirmative defenses,” including estoppel. It also filed a counterclaim that included a detailed history of the local church; a history of the United Methodist Church and its relationship to previous denominations whose name contained the word “Methodist”; a description of the rules and regulations of the United Methodist Church relating to church property which are contained in the United Methodist Church Book of Discipline; and the reasons why it should be awarded ownership of the real property and funds.[3] Mountain Lakes claimed that the local church had accepted all the rules, regulations, and polity of the United Methodist Church contained in that denomination’s Book of Discipline, and that pursuant thereto, it should be awarded all rights, title, and interest in the funds and real property “for the use and benefit of the United Methodist denomination and the local congregation known as Oak Grove United Methodist Church.” Mountain Lakes contended that the local church' had been affiliated with predecessor denominations that had merged with or had become a part of the United Methodist Church. Mountain Lakes asserted that the Book of Discipline contains a “trust clause” that “mandates that all places of United Methodist congregations are to be held ‘in trust,’ to be used, kept and maintained as places of divine worship of the United Methodist ministry for the benefit of members of the United Methodist Church.” Mountain Lakes further denied that Mr. Green was authorized to bring the action or to be awarded the property or funds and stated:
“There is no proof that ‘John “Bobby” Green’ has authority for and on behalf of the Plaintiffs group, or even that any organization or association purportedly known as ‘Oak Grove Methodist Church,’ exists.
“Plaintiffs group’s complaint fails to identify any person or persons purportedly represented by John ‘Bobby[1] Green.”
Mountain Lakes assumed that the complaint had been brought on behalf of the individual members of the local church who did not wish to remain affiliated with the United Methodist Church. However, Mountain Lakes reasserted that there was no evidence indicating that the local church was an organized entity, and, it asserted, the local church is, “at best, an unincorporated association, which may only act with the consent of all its members — not through the actions of a single individual.”
Mr. Green later amended his complaint to delete references to Alabama trust law and to delete the reference contained in the original complaint to the meeting held with United Methodist Church officials before the initial vote to disaffiliate from the denomination.
During the course of the litigation, Superior Bank (a financial institution) intervened in the action, asserting that it had funds on deposit in several accounts for the benefit of the local church as well as items associated with the local church that were contained in a safe deposit box. Some accounts were apparently in the name of the local church, while other ac *176 counts were listed in bank records as being the property of the “Oak Grove Cemetery Fund.” Both Mountain Lakes and Mr. Green asserted claims to the funds in those accounts. Superior Bank was permitted to interplead the funds into court and was discharged from the litigation.[4]
This appeal involves the ownership of three parcels of real estate and the interpretation of three deeds. The first deed (hereinafter referred to as “deed no. 1”) was recorded in 1879.[5] Deed no. 1 describes the parcel of land where the local church’s building is located. The grantees of the deed are described as follows: “Jas. Good, Thos. Lancaster & Jeve Rickies as trustees of the Oak Grove Methodist Church and their successors in office forever.” The second deed (hereinafter referred to as “deed no. 2”) was recorded in December 1897.[6] The land described in deed no. 2 is being used as a cemetery that is associated with the local church. There is apparently a factual dispute as to the correct grantees of this deed. Mountain Lakes asserts that the grantees were certain named individuals as “Trustees of the M.E. Church South.”[7] Mr. Green asserts that the correct grantee description in deed no. 2 is “Trustees of the M.E. Church South of the Blountsville and Haneeville ch.” In its reply brief, Mountain Lakes asserts that the words “of the Blountsville and Haneeville ch.” are not contained in any material that was before the trial court at the time of the entry of the judgment from which the appeal was taken (hereinafter, the “final order”).[8] Mountain Lakes does not move to strike the material containing those words on appeal; instead, it argues that the words support its position that the intent of the grantor was to convey the property to the denomination. In the final order, the trial court made the following finding regarding the grantees of this deed:
“There exists a deed ... (‘deed No. 2’) ... which deeded approximately one acre to ‘Trustees of the M E Church South of the Blountsville & Haneeville ch’.... The Court notes that the words ‘Oak Grove’ are in parenthesis after the ‘eh’ in the designation. It is clear by looking at the original probate record that these words were added sometime after the deed was filed and were written in a different ink.”
Neither party addresses the finding that the words “Oak Grove” were added at some point to the description of the grantees. Mountain Lakes contends, however, that neither party raised any issue regarding the original probate record before the entry of the final order and that the trial court’s finding regarding the addition of the words was not supported by the materials before the trial court.
*177 The third deed (hereinafter referred to as “deed no. 3”) also describes land being used as a cemetery in association with the local church. This deed was recorded in 1965 and conveyed a small tract of land to the “Trustees of Oak Grove Methodist Church.”
On March 24, 2011, Mountain Lakes filed a motion for a summary judgment, with an accompanying brief, supported by evidentiary material, including documents reflecting the history of the United Methodist Church as it evolved from predecessor Methodist denominations, the history of the local church, the relationship between the local church and various Methodist denominations, and excerpts from the United Methodist Church’s Book of Discipline that Mountain Lakes contended were applicable to the ownership of real property. It was Mountain Lakes’ position for purposes of its motion for a summary judgment that the three deeds in question unambiguously granted ownership of the parcels described in those deeds to the United Methodist Church and not to the local church, that there were no genuine issues of material fact as to the ownership of those parcels, and that, therefore, those parcels should be awarded to it on behalf of the United Methodist Church to be held in trust for the use benefit of the “Oak Grove United Methodist Church.”[9] Mr. Green responded by asserting that the deeds were ambiguous and that questions of fact remained regarding the grantors’ intent in each deed. Mr. Green specifically asserted that summary judgment was not appropriate in view of the alleged fact questions presented. Mr. Green did not move for a summary judgment.
A hearing was apparently held on September 7, 2011, on the summary-judgment motion filed by Mountain Lakes. On September 8, 2011, the trial court denied Mountain Lakes’ summary-judgment motion and set the case for .trial on October 24, 2011. Mountain Lakes then moved to strike the jury demand filed by Mr. Green on the ground that the question whether the deeds were ambiguous was one of law, not fact. Mountain Lakes asserted: “This case only involves construction of the deeds to the Oak Grove United Methodist Church and cemetery property. Whether those documents are ambiguous or not is a question of law. Therefore, there is no need for a jury trial in this cause, and indeed, a jury is not permissible.” A ruling on the motion to strike the jury demand does not appear in the record. Mountain Lakes subsequently filed a list of witnesses and exhibits to be offered at the trial of the case “pursuant to [the trial court’s] ‘Order Setting Civil Jury Case for Trial’ entered October 1, 2010.” Mountain Lakes asserts that it identified in that document three witnesses “who would have testified regarding the ‘intent’ of the grantors of the deeds at issue in this case.” Mr. Green also filed a witness and exhibit list in anticipation of trial, to which Mountain Lakes filed a motion for clarification or supplementation. On October 19, 2011, the trial court entered an order stating that all pending motions would be heard on October 24.
There is no transcript of the October 24 hearing. On appeal, both parties agree that the hearing addressed only Mountain Lakes’ summary-judgment motion even though it had been denied on September 8, 2011. On April 30, 2012, the trial court rendered its detailed and thorough final order. The trial court noted that courts will not address issues of spiritual or ecclesiastical concerns regarding church operations or polity, citing Trinity Presbyterian *178 Church of Montgomery v. Tankersley, 374 So.2d 861 (Ala.1979). In that case, the Supreme Court held that, although:
“civil courts cannot resolve disputes concerning spiritual or ecclesiastical affairs, and decisions of a hierarchical church’s judicatories must be followed regarding such matters, ... civil courts [may] re-solv[e] disputes concerning civil or property rights. Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1977); Williams v. Jones, 258 Ala. 59, 61 So.2d 101 (1952). The U.S. Supreme Court recognized the right of civil courts to decide disputes concerning church property in Presbyterian Church v. Mary E.B. Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969) and in Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc., 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970). Both Hull and Sharpsburg clearly indicate that civil courts have authority to decide disputes concerning church property; however, civil courts cannot resolve controversies involving religious doctrine or practice in deciding such property disputes. In other words, the courts must decide the property disputes by looking at so-called ‘neutral principles of law' and not resolve the underlying controversies over religious doctrine. Hull, 393 U.S. 440 at 449, 89 S.Ct. 601, 21 L.Ed.2d 658.”
Id. at 865-66.
The trial court appropriately stated that it would apply “neutral principles of law” and held that the issue of the ownership of the real property would be determined solely by the language of the deeds. On that basis, the court ruled as follows:
“As to deed No. 1 the court finds that the language of the deed is controlling and that said parcel belongs to the ‘trustees’ of the church and not to the defendants. It would be the present successors of those trustees that would determine whether or not they wish to have a ‘United Methodist Church’ congregation meet in and assemble upon said land and building(s).
“As to deed No. 2 the court finds that the language of this deed is controlling and that said parcel again belongs to the ‘trustees’ of the church and not to the defendants. This deed designates this land as a cemetery and it shall remain a cemetery. Again, it would be the present successors of those trustees that would be responsible for the said cemetery and its upkeep.
“As to deed No. 3 the court finds that the language of this deed is controlling and that said parcel again belongs to the ‘trustees’ of the church and not to the defendants, and it would be the present successors of those trustees that would be responsible for the said cemetery and its upkeep.”
The final order also awarded all funds held in the name of “Oak Grove Methodist Church” to Mountain Lakes and all funds held in the name of the “Oak Grove Cemetery Fund” to the Oak Grove United Methodist Church Cemetery Association, Inc., an entity that was not a party to the action. Mountain Lakes does not raise any issue on appeal regarding the award of the funds, and Mr. Green did not file a cross-appeal.[10]
Mountain Lakes filed a timely motion to alter, amend or vacate the final order. Mountain Lakes argues that only its motion for a summary judgment asserting *179 that no genuine issues of material fact existed as to its claim of ownership was before the trial court. The final order, however, contains the following prefatory statements:
“This cause came to be heard on October 24, 2011 on [Mountain Lakes’] Motion for Summary Judgment.... At the bearing counsel for the parties informed the Court that there was no dispute as to the pertinent facts needed for the court to make a final decision.
“The Court after an ore tenus hearing and having considered the arguments of counsel and having reviewed the submissions of counsel finds as follows: .... ”
Mountain Lakes asserted in its post-judgment motion that it had not agreed at the October 24 hearing that no additional evidence would be presented if its summary-judgment motion was denied; rather, it asserted only that it had not decided whether it would present additional evidence at a trial. Mountain Lakes argues:
“[Mountain Lakes’] motion for summary judgment was based on its assertion that the deeds to the church and cemetery which are at the center of this action were unambiguous, and that the appropriate construction thereof mandated a ruling in favor of [Mountain Lakes] as a matter of law.
“By its Final Order, [the trial court] has apparently determined that the deeds were ambiguous. That being the case, according to the Haney’s Chapel United Methodist Church [v. United Methodist Church, 716 So.2d 1156 (Ala.1998),] decision cited by [the trial court] in its Final Order, [Mountain Lakes] as well as [Mr. Green] is authorized to introduce extrinsic evidence to explain the intent of the drafters of the deeds at issue.”
Mountain Lakes contends that, because its motion for a summary judgment was denied, it was entitled to a trial on the merits:
“[Mountain Lakes] had already filed its witness and exhibit list ... in anticipation of the trial it was expecting. That witness and exhibit list identified at least three live witnesses ... who would have testified regarding the ‘intent’ of the grantors of the deeds at issue in this case.
“In short, the ore tenus rule is not applicable to this appeal since — contrary to the trial judge’s statement in his Final Order — no ore tenus hearing ever was held. Mountain Lakes was denied its opportunity for a trial. The correct status of this case, procedurally, is that [Mountain Lakes’] motion for summary judgment was overruled. The next step should have been — and still may be — to set this matter for trial.”
Mr. Green agrees that the October 24 proceeding was conducted only as a hearing on Mountain Lakes’ summary-judgment motion:
“At the summary judgment hearing on October 24, 2011, no evidentiary submissions were made by [Mr. Green] in response to [Mountain Lakes’] motion for Summary Judgment. However, both sides made lengthy arguments based on [Mountain Lakes’] evidentiary submission. At the hearing, [Mr. Green] conceded that [Mountain Lakes] could get all of its evidentiary submissions] properly admitted into evidence. [Mr. Green] further conceded that [he] did not have any additional evidence to present at that time. [Mountain Lakes] moved to strike [Mr. Green’s] jury demand, making it clear that [Mountain Lakes] wanted the trial judge to make all findings of fact. Thus, it appears that the trial court issued its final order based on consideration of all the evidence presented by [Mountain Lakes] in *180 support of its summary judgment motion.”
Mountain Lakes’ postjudgment motion was denied, and this appeal followed.

Discussion

The initial question presented is whether the ore tenus rule is applicable to our review of the final order:
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995).’ ”
Yeager v. Lucy, 998 So.2d 460, 463 (Ala.2008) (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000), quoting in turn Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)).
No oral testimony was taken at the October 24 proceeding. Therefore, the ore tenus rule does not apply to any findings of fact in this case:
“ ‘ “[Wjhen a trial judge’s ruling is not based substantially on testimony presented live to the trial judge, review of factual issues is de novo.’” Goodwyn, Mills & Cawood, Inc. v. Markel Ins. Co., 911 So.2d 1044, 1047 (Ala.2004) (quoting Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999)).”
Vest v. Vest, 978 So.2d 759, 762 (Ala.Civ.App.2006). Although there is no transcript of the October 24 hearing, it is apparent from the final order that the trial court was given the impression at that hearing that both parties wanted a final decision to be rendered solely on the evi-dentiary materials that had been submitted in support of Mountain Lakes’ summary-judgment motion. Stated otherwise, the trial court proceeded as if there were no genuine issues of material fact as to any issue in the case,[11] presumably based upon statements or representations made by the parties at the hearing. Mountain Lakes asserted in its postjudgment motion, and it continues to assert on appeal, that it did not agree for all purposes that there were no disputed facts; rather, it asserted, and continues to assert on appeal, that it was entitled to a judgment in its favor or a trial on the merits.
As to the real property, the final order was rendered in favor of the party that did not move for summary judgment and against the party that did move for a summary judgment. As its first argument, Mountain Lakes asserts that its motion for a summary judgment was due to be granted. Ordinarily, a party may not appeal from the denial of a summary-judgment motion. Parsons Steel, Inc. v. Beasley, 522 So.2d 253, 258 (Ala.1988) (“An order denying summary judgment is interlocutory and nonappealable.”). Where cross-motions for a summary judgment are filed in the trial court, the party whose motion was not granted is entitled to have that motion reviewed on an appeal from the grant of the opponent’s motion:
“[An] appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b)[, Ala. R. Civ. P.,] summary judgment disposing of fewer than all claims) entitles the [appellant], for purposes of our review, to raise issues based upon the trial *181 court’s adverse rulings, including the denial of its summary-judgment motions. See Ala. R.App. P. 4(a)(1).”
Lloyd Noland Found. v. City of Fairfield Healthcare Auth., 837 So.2d 258, 263 (Ala.2002).
A summary judgment motion may be granted in favor of a nonmovant only when all parties had the opportunity to be fully heard on all relevant issues:
“[The supreme court] has previously held that ‘a trial court should not sua sponte enter a summary judgment in favor of a party who has not filed a motion seeking such a judgment without affording “an opportunity to present evidence in opposition to it.” ’ Alpine Assoc. Indus. Servs. v. Smitherman, 897 So.2d 391, 395 (Ala.[Civ.App.]2004) (quoting Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 927 (Ala.2002)). This is because ‘ “[o]ne purpose of the procedural rights to notice and hearing under Rule 56(c)[, Ala. R. Civ. P.J is to alloiu the nonmoving party the opportunity to discover and to present evidence opposing the motion for summary judgment.” ’ Moore, 849 So.2d at 927 (quoting Van Knight v. Smoker, 778 So.2d 801, 805 (Ala.2000)). We have reversed summary judgments when neither party had filed a summary-judgment motion and also when the losing party had no notice that a summary judgment could be forthcoming and no opportunity to present evidence in opposition to the summary judgment. See, e.g., Moore, 849 So.2d at 927 (‘Because Rule 56 requires, at the least, that the nonmoving party be provided with notice of a summary-judgment motion and be given an opportunity to present evidence in opposition to it, the trial court violates the rights of the nonmoving party if it enters a summary judgment on its own, without any motion having been filed by a party.’). ‘ “Rule 56 ‘is not prefaced upon whether or not the opposing party may successfully defend against summary judgment, [but] it does require that the opportunity to defend be given’ ” ’ (quoting Van Knight, 778 So.2d at 806, quoting in turn Tharp v. Union State Bank, 364 So.2d 335, 338 (Ala.Civ.App.1978)), although the right to notice of a potential summary judgment may be waived. See id.”
Giles v. Brookwood Health Servs., Inc., 5 So.3d 533, 555 (Ala.2008).
In the alternative, Mountain Lakes argues that it was not fully heard on all relevant issues and that it would have presented additional evidence at a trial or, presumably, in response to a summary-judgment motion had one been filed by Mr. Green.
Both sides argued, and the trial court agreed, that the legal principles set out in Haney’s Chapel United Methodist Church v. United Methodist Church, 716 So.2d 1156 (Ala.1998), are applicable in this case. That case involved a similar dispute over the ownership of real property following a decision by members of Haney’s Chapel to dissolve their relationship with the United Methodist Church. The primary deed at issue in that case described the grantees as “Trustees for ... Haney’s Chapel, their successors in office and assigns.” Id. at 1158-59. There was no mention of a denomination in the description of the grantees. Following a trial at which oral testimony and other extrinsic evidence of the intent of the grantor of the deed was presented, the trial court found in favor of the United Methodist Church. On appeal, the supreme court set out the applicable legal principles to be applied to such disputes:
“[W]e note that civil courts have general authority to resolve church property disputes; however, the First Amendment to the United States Constitution pro *182 hibits a court’s resolving property disputes on the basis of religious practice or doctrine. Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 449, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); Jones v. Wolf, 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Alabama courts have adopted the ‘neutral principles of law' approach applied in Hull, 393 U.S. at 449, 89 S.Ct. 601, and will consider, in purely secular terms, the language of the deeds, the charter of the local church, any applicable state statutes, and any relevant provisions contained in the discipline of the national church as a means of adjudicating the dispute. Trinity Presbyterian Church of Montgomery v. Tankersley, 374 So.2d 861, 866 (Ala.1979); [African Methodist Episcopal Zion Church of America, Inc. v.] Zion Hill [Methodist Church, Inc.], 534 So.2d [224] at 225 [ (Ala.1988) ].”
Id. at 1158.
After applying these principles to the evidence produced at trial, the supreme court reversed the judgment in favor of the United Methodist Church because, it held, the evidence would support only a finding that the grantor of the deed intended to convey the property to the trustees of Haney’s Chapel and not to the denomination. The supreme court did not find the deed to be unambiguous; instead, it held the evidence presented at trial was insufficient to find in favor of the denomination.
In the present case, Mr. Green, citing Central Alabama Conference of the AME Zion Church in America v. Crum, 746 So.2d 1013 (Ala.Civ.App.1999), argues that Mountain Lakes cannot be awarded ownership of any real property unless the deed to that property “clearly state[s] [an] intent to convey [the] property to any higher church body, denomination, or organization.” The words “clearly state[s]” are taken from § 10A-20-2.03(a), Ala.Code 1975 (formerly codified at § 10-4-22), a statute providing an incorporated local church certain protections regarding the ownership of real property. That statute provides:
“(a) Unless otherwise dearly stated in the deed or other instrument under which any church corporation organized under this article derives title or unless afterwards approved by a majority of the adult members of the congregation of the church at a meeting held after announcement from the pulpit of the church at least seven days from the date of the announcement, the church corporation, whether heretofore or hereafter organized and incorporated under this article, shall be, and shall remain, a distinct and independent church corporation free from the regulation and control of any higher church body, denomination, or other organization with which it is now, or hereafter, associated or affiliated insofar as the management, control, disposition, or alienation of its real property is concerned.”
(Emphasis added.)
The local church in Crum was incorporated. The supreme court applied former § 10-4-22 and affirmed the trial court’s conclusion that the deed did not “clearly state” that the property at issue was intended to be conveyed to the denomination. Id. at 1017. In contrast, there is no evidence in the record in this case indicating that Oak Grove Methodist Church was incorporated; therefore, the “clearly state[s]” rationale is not applicable.
This case is similar to Ex parte Central Alabama Conference African Methodist Episcopal Zion Church in America, 860 So.2d 865 (Ala.2003), in which a dispute over ownership of certain real property followed a decision by members of the *183 Franklin Church to disaffiliate from a denomination, the AME Zion Church. Three deeds involving the same parcel were considered: a deed from the original grantor to “ ‘Trustees of Franklin Church’ a later deed from “the trustees of Franklin Church” to the “ ‘Trustees of the Franklin AME Zion Church’ and a final deed executed just prior to the vote to disaffiliate from the “ ‘Trustees of Franklin AME Zion Church’ ” to the “ ‘Trustees of Franklin Church.’ ” Id. at 866. In reversing a summary judgment that had been entered by the trial court in favor of the Franklin Church, the supreme court held:
“[The] deeds are ambiguous and allow for differing interpretations as to the ownership of the property. Unlike Haney’s Chapel and Crum, there is no indication that the grantors intended to convey the property to the local church and to exclude the hierarchical church.
“In both Haney’s Chapel and Crum, extrinsic evidence presented at an ore tenus hearing helped determine the intent of the relevant deeds. 716 So.2d at 1157, 746 So.2d at 1014. No such hearing was conducted in the present case. Further, the AME Zion Church presented evidence indicating that Franklin Church, throughout its history, has accepted benefits from the AME Zion Church. The AME Zion Church has provided pastors, the pastors’ health insurance and retirement benefits, worship materials, and financial assistance in certain situations. Franklin Church has followed the Book of Discipline, it has been known throughout the community as an AME Zion member church, and it has followed the customs and policies of the AME Zion Church. These facts support the Central Alabama Conference’s claim that a hierarchical relationship exists between the AME Zion Church and Franklin Church. In [African Methodist Episcopal Zion Church of America, Inc. v.] Zion Hill [Methodist Church, Inc.], this Court held that when national and local churches have participated in a longstanding hierarchal relationship, the local church may not unilaterally sever that relationship. 534 So.2d [224] at 228 [ (Ala.1985) ].
“The summary judgment prohibits the Central Alabama Conference from presenting evidence at an ore tenus hearing (such as was held in both Haney’s Chapel and Crum) to help define the meaning of the deeds in question. 716 So.2d at 1157, 746 So.2d at 1014. In such a hearing, the trial court would follow the ‘neutral-principles-of-law’ approach and examine the deeds, the Book of Discipline, and other extrinsic evidence to help settle the current property dispute. See Crum, 746 So.2d at 1016.
“... Specifically, a dispute exists as to the intent of the initial grantors of the property: whether they intended to convey the property to the Franklin Church to the exclusion of any national church or whether they intended to convey the property to the AME Zion Church. Likewise, the ‘trust clause’ in the Book of Discipline, as it relates to the [second] deed deeding the property to the ‘Trustees of the Franklin AME Zion Church,’ creates a genuine issue of material fact as to who is the true property owner.”
Id. at 868-69.
Likewise, in Ex parte African Methodist Episcopal Zion Church, 860 So.2d 870, 874 (Ala.2003), the supreme court found certain deeds to church property to be ambiguous and held that the dismissal of the complaint “prohibits the [denomination] from presenting evidence at an ore tenus hearing (such as those held in both Haney’s Chapel and Crum) to help define the meaning of the conveyances in question.”
Mountain Lakes recognizes that if an ambiguity exists regarding the intent of *184 the grantors based on the description of the grantees in the deeds, it is not entitled to a judgment as a matter of law in its favor. It further contends that if there is an ambiguity, the final order must be reversed because it is entitled to be heard further. All three deeds use the term “Methodist” in the description of the grantees. Based on Ex parte Central Alabama Conference, we agree that an ambiguity exists. Because Mountain Lakes has established that it was not “fully heard” on all issues, we must reverse the final order in favor of Mr. Green so that extrinsic evidence may be introduced and considered.[12] From the record presented to us by the parties, some of the factual disputes remaining may include, but are not necessarily limited to, the intention of the grantors in each deed and import of the “additional” language noted in Deed no. 2. Unless it is determined through a properly pleaded and supported summary-judgment motion that there are no genuine issues of material fact, the resolution of the ownership question shall be resolved, after a trial, based on “the language of the deeds, the charter of the local church, ... and any relevant provisions contained in the discipline of the national church,” to the extent applicable. Haney’s Chapel, 716 So.2d at 1158.[13] We note that Mountain Lakes has also raised questions regarding the organizational structure of the local church, whether the local church has trustees, and the capacity or status of Mr. Green to proceed as a proper representative to bring the case or to be awarded ownership of any property. Mr. Green contends that these issues were never in dispute. Mountain Lakes points out that these are, in fact, contested issues:
“In its very first answer to Mr. Green’s complaint, as well as in its answer to his amended complaint, [Mountain Lakes] asserted that, to its knowledge: (i) there is no such entity as the Oak Grove Methodist Church; (ii) there is no proof that [Mr. Green] had authority to act for or on behalf of the plaintiffs group, or even that any organization or association purportedly known as the ‘Oak Grove Methodist Church’ exists; and (iii) the plaintiffs complaint failed to identify any person or persons purportedly represented by [Mr. Green].”
It may be that Mountain Lakes is ultimately not entitled to ownership of the real property, but it has demonstrated that it is entitled to be heard further on the issues. Therefore, the final order is reversed, and the case is remanded for further proceedings. There is no legal basis for an award of attorney fees on appeal as requested by Mr. Green; therefore, that request is denied.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.

. The reason the number of participants in this vote exceeded the stated active membership of the local church is not explained in the complaint; however, materials in the record suggest that this might have been the result of a decline in membership after the February 2009 vote.

. The "Land” and "Money” were not specifically described in the complaint.

. Mountain Lakes claimed that it is authorized under the Book of Discipline to "hold title to property and to enforce trusts for the benefit of the denomination....”

. The judgment appealed from in this case made an award of those funds. Neither party addresses the division of those funds on this appeal.

. There is a discrepancy in the record concerning the correct date this deed was recorded, but neither party asserts that the date of the deed is a fact of consequence in this case.

. As with deed no. 1, there is a discrepancy in the record concerning the correct date this deed was recorded, but neither party asserts that the date of the deed is a fact of consequence in this case.

. The individuals are not named in the parties' briefs to this court. Mountain Lakes contends that “M.E. Church South” stands for the Methodist Episcopal Church South, an entity that merged with two other denominations in 1939 to form the "Methodist Church,” which became the United Methodist Church in 1968.

. The reason for the alleged discrepancy as to the identity of the grantees is not explained in the parties' briefs.

. Mountain Lakes’ motion for a summary judgment did not address the funds that had been interpleaded into court by Superior Bank.

. In its postjudgment motion, Mountain Lakes asserted that Oak Grove United Methodist Cemetery Fund, Inc., was not a party to the litigation, and could not be awarded any funds without being made a party. That issue has not been presented on this appeal.

. The ore terms rule also does not apply to judgments decided on undisputed facts. Philpot v. State, 843 So.2d 122, 125 (Ala.2002).

. We note that Mountain Lakes' motion to strike the jury demand filed by Mr. Green remains pending. Whether Mr. Green is entitled to have a jury resolve any factual disputes in this case is a matter more appropriately addressed initially by the trial court on remand.

. Haney's Chapel lists any applicable state statutes as an additional possible factor to be considered. Because there is no evidence presently indicating that the local church is incorporated and because no statutes have been cited by the parties, this additional factor would not be applicable. 716 So.2d at 1158 n. 4 (noting that because Haney’s Chapel was not incorporated, there were no state statutes to apply); accord Ex parte Central Alabama Conference, 860 So.2d at 868 n. 2.